UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER SPRUILL, as legal guardian and next friend of "D.N.S.," a minor, | )<br>)<br>) |
| Plaintiff, | ) 20 C 4927<br>)<br>) Judge Gary Feinerman |
| vs. | )<br>) |
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, KAREN CALLOWAY, CORIE MORRISON, SHERRY BALL, PATRICIA STUBER, and LESLIE GILL, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

Jennifer Spruill brings this suit on behalf of D.N.S.—a minor and student at Kenwood Academy High School—under 42 U.S.C. § 1983, alleging that the Chicago Board of Education and five Kenwood administrators ("Individual Defendants") violated D.N.S.'s Fourteenth Amendment due process rights by failing to protect him from a sexual assault by another student. Doc. 1. Defendants move to dismiss the complaint under Civil Rule 12(b)(6). Doc. 16. The motion is granted, though Spruill will be given an opportunity to replead.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Spruill's brief opposing dismissal, so long as those additional facts "are consistent with

1

the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Spruill as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

In January 2020, D.N.S. was sexually assaulted in a Kenwood bathroom by D.R., another Kenwood student. Doc. 1 at ¶¶ 12-13. D.N.S. was not D.R.'s first victim, and many Kenwood administrators were aware of at least one prior sexual assault accusation against D.R. *Id*. at ¶¶ 14-19. Those administrators included four of the Individual Defendants: Karen Calloway, Kenwood's principal, *id*. at ¶¶ 7, 16; Sherry Ball, an assistant principal, *id*. at ¶¶ 9, 17; Patricia Stuber, another assistant principal, *id*. at ¶¶ 10, 18; and Leslie Gill, a dean, *id*. at ¶¶ 11, 19. (The complaint makes no such allegation regarding the fifth Individual Defendant, Corie Morrison, another assistant principal. *Id*. at ¶ 8.) The Board also was aware of the prior accusation(s) against D.R. *Id*. at ¶ 15. Yet neither the Board nor Individual Defendants took any action to remove D.R. from Kenwood, to monitor him in order to prevent another attack, or to discipline him for his prior assault(s). *Id*. at ¶¶ 20-24.

Aside from D.R.'s history, the Board was aware of widespread student-on-student sexual harassment and assault in Chicago public schools. *Id*. at ¶ 26. As detailed in a 2019 report by the U.S. Department of Education's Office of Civil Rights, Chicago public school students frequently report inappropriate sexual touching—often, as with the attack on D.N.S., by repeat offenders and in school bathrooms. *Id*. at ¶¶ 28-29. Yet the Board has not taken systemic action to train school staff in preventing sexual violence, to punish offenders, or to protect victims. *Id*. at ¶¶ 30-34.

**Discussion**

Spruill asserts two claims on D.N.S.'s behalf, each arising under 42 U.S.C. § 1983. The first invokes D.N.S.'s right under the substantive component of the Fourteenth Amendment's Due Process Clause to be free from state-created danger. Doc. 1 at ¶¶ 35-42. In particular, she claims that Individual Defendants, by failing to discipline or monitor D.R., and by neglecting to ensure that school bathrooms were safe, violated D.N.S.'s rights by "creat[ing] and/or increas[ing] the risk that [he] would be physically harmed." *Id*. at ¶¶ 38-40. The second is a *Monell* claim against the Board, alleging that its "*de facto* practices, policies and procedures" concerning student-on-student sexual violence caused the deprivation of D.N.S.'s due process rights. *Id*. at ¶¶ 43-50; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

As to Assistant Principal Morrison, the complaint fails to state a claim because it does not allege any involvement on his part. *See Est. of Perry v. Wenzel*, 872 F.3d 439, 459 (7th Cir. 2017) ("Individual liability pursuant to § 1983 'requires personal involvement in the alleged constitutional deprivation.'") (quoting *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017)). The complaint does not allege that Morrison had knowledge of previous sexual assault accusations against D.R.; Morrison's name, in fact, does not appear in the complaint after being listed in the caption and introduced in the "Parties" section. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."); *Williams v. Cnty. of Cook*, 2010 WL 3324718, at *8 (N.D. Ill. Aug. 19, 2010) ("Although the complaint and parties section of the complaint list multiple defendants, only [two] are mentioned anywhere in the body of the complaint … .").

As to the other Individual Defendants, whose personal involvement is alleged, Spruill's claim fails because the complaint does not allege a violation of D.N.S.'s due process rights. In

3

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), the Supreme Court held that while the Due Process Clause protects individuals against *government* misconduct, it does not generally impose a duty on the state to protect against harm from *private* parties. *See D.S. ex rel. Stahl v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) ("Although the Due Process Clause of the Fourteenth Amendment prevents the state from infringing on an individual's right to life, liberty, or property, it does not 'impose an affirmative obligation on the [s]tate to ensure that those interests do not come to harm through other means.'") (alteration in original) (quoting *DeShaney*, 489 U.S. at 195). There are two exceptions to the general rule, in which injury at the hand of a private party can give rise to a due process claim against a state actor.

The first is called the "special relationship" exception, which stems from the recognition that "when a state has custody over a person, it must protect him because no alternate avenues of aid exist." *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009). This exception was acknowledged in *DeShaney*, but only as applying in custodial situations like incarceration or involuntary commitment. *See* 489 U.S. at 198-200 ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."). Indeed, the Seventh Circuit held soon after *DeShaney* that, for purposes of this exception, there is no "special relationship" between public schools and their students. *See J.O. v. Alton Cmty. Unit Sch. Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990) ("We do not suggest that prisoners and mental patients are an exhaustive list of all persons to whom the state owes some affirmative duties, but the government, acting through local school administrations, has not rendered its schoolchildren

4

so helpless that an affirmative constitutional duty to protect arises."); *accord, e.g., D.S.*, 799 F.3d at 799 ( "[S]chool officials do not have an affirmative duty to protect students … .").

The second exception—and the one pertinent here—involves cases of "state-created danger." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916-17 (7th Cir. 2015). This "narrow" exception "applies where the state creates or increases a danger to an individual." *Id*. at 917. The Seventh Circuit has cautioned that the notion of "creat[ing] or increas[ing]" danger "must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect." *Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 599 (7th Cir. 2008). Rather, "[w]hen courts speak of the state's 'increasing' the danger of private violence, they mean the state *did something* that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Id*. at 600 (emphasis added); *see also Estate of Her v. Hoeppner*, 939 F.3d 872, 876 (7th Cir. 2019) (describing the state-created danger exception as applying "when a public official '*affirmatively* places a particular individual in a position of danger the individual would not otherwise have faced'") (emphasis added) (quoting *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)).

Even when one of these exceptions applies, there is no violation of an individual's due process rights unless the state actor's conduct "shocks the conscience." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). This means that the state actor's conduct must be truly "'egregious'"; "[m]aking a bad decision, or even acting negligently, does not suffice to establish the type of conscience-shocking behavior that results in a constitutional violation." *Jackson v. Indian Prairie Sch. Dist. 204*, 653 F.3d 647, 654-55 (7th Cir. 2011) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)); *see also Estate of Her*, 939 F.3d at 876 ("[C]onscience-shocking conduct … requires a culpable state of mind equivalent to

deliberate indifference. Elsewhere we've referred to this as a requirement of criminal recklessness.") (citation omitted).

Thus, as the Seventh Circuit has explained, there are three requirements for stating a claim under the state-created danger doctrine: "First, in order for the Due Process Clause to impose upon a state the duty to protect its citizens, the state, by its affirmative acts, must create or increase a danger faced by an individual. Second, the failure on the part of the state to protect an individual from such a danger must be the proximate cause of the injury to the individual. Third, because the right to protection against state-created dangers is derived from the substantive component of the Due Process Clause, the state's failure to protect the individual must shock the conscience." *King*, 496 F.3d at 817-18 (citations omitted); *accord*, *e.g.*, *Johnson v. Rimmer*, 936 F.3d 695, 708 (7th Cir. 2019) (setting forth the same test); *Wilson v. Warren Cnty.*, 830 F.3d 464, 469-70 (7th Cir. 2016) (same). *But cf. Weiland v. Loomis*, 938 F.3d 917, 920-21 (7th Cir. 2019) (raising, but not resolving, the question whether the "three-part test" allows for liability broader than that permitted by *DeShaney*).

Recognizing that D.N.S. was attacked by another student and not by a state official, Spruill's complaint expressly relies on a state-created danger theory. Doc. 1 at ¶ 37. But the complaint fails to satisfy the first requirement of such a claim because it does not allege an "affirmative act[]," *King*, 496 F.3d at 818, by any defendant. The most the complaint alleges of any defendant is *awareness* of D.R.'s proclivity for sexual violence and *inaction* as to measures that might have protected D.N.S. from further violence by D.R. Specifically, the complaint alleges that the Board and four Individual Defendants "w[ere] aware of at least one" prior incident involving D.R, Doc. 1 at ¶¶ 15-19, but that they "took no action," *id.* at ¶¶ 20-23. Missing is any allegation of an *affirmative* act by any defendant. The complaint's gist, in short,

is that school officials knew that a certain student was a predator but stood idly by, thus leading to another attack. That conduct may have been negligent—and perhaps a violation of state law or federal statutory law, neither of which Spruill invokes—but it does not rise to the level of a due process violation under Seventh Circuit precedent interpreting *DeShaney*. *See Weiland*, 938 F.3d at 920 ("[T]he Due Process Clause generally does not condemn official negligence.").

Spruill's rejoinder relies entirely on *Eilenfeldt ex rel. J.M. v. United C.U.S.D. #304 Board of Education*, 84 F. Supp. 3d 834 (C.D. Ill. 2015). Doc. 20 at 4-5. *Eilenfeldt* also involved a public school student harmed by a fellow student; there, the plaintiff brought a substantive due process claim on behalf of a middle schooler whom school officials allegedly failed to protect from severe bullying. *See* 84 F. Supp. 3d at 838-41. In denying a motion to dismiss, the district court rejected the defendants' argument that, because "a failure to act is not actionable under substantive due process," the plaintiff did not state a viable due process claim. *Id*. at 845 (internal quotation marks omitted). Spruill reads *Eilenfeldt* as having "rejected the same argument the defense makes here: that inaction cannot serve as the basis of a state-created danger claim." Doc. 20 at 5. In particular, she keys in on the district court's observation that "misbehav[ior] only by inaction do[es] not, in [it]sel[f], supply any reason to dismiss" a due process claim. *Eilenfeldt*, 84 F. Supp. 3d at 845.

As a district court decision, *Eilenfeldt* is only persuasive authority, not precedential. In any event, Spruill misreads *Eilenfeldt* by conflating two different senses in which an affirmative act by a state actor might result in a due process violation—one an affirmative act that directly harms the plaintiff, and the other an affirmative act that places the plaintiff in danger or increases the danger the plaintiff already faces from other sources, thereby creating a *future* duty to act. *Eilenfeldt* correctly recognizes that a state actor cannot defeat a substantive due process claim—

7

which ordinarily requires an affirmative act by the state, *see DeShaney*, 489 U.S. at 195 ("The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.")—simply by arguing that the plaintiff was injured by the state actor's inaction. That is because, as explained above, there are two situations in which the state acquires an affirmative duty to act—namely, when a special relationship exists between the plaintiff and the state, and when the state creates or increases the danger faced by the plaintiff.

Defendants here make an argument narrower than the one that failed for the *Eilenfeldt* defendants. Defendants here simply point out that the state-created danger doctrine comes into play only when "the state, *by its affirmative acts*, [has] create[d] or increase[d] a danger faced by an individual." *King*, 496 F.3d at 817-18 (emphasis added); *see* Doc. 16 at 2-4; Doc. 22 at 1-4. In other words, there must be an affirmative act that places the plaintiff in danger or increases the danger the plaintiff already faces. Thus, having invoked the state-created danger doctrine, Spruill bears the burden of alleging an affirmative act by Defendants that either "created or increased" the danger facing D.N.S. *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015). But Spruill fails to do so: the complaint alleges only that Defendants stood idly by while sexual violence became prevalent in Chicago public schools generally and at Kenwood (by D.R.) in particular, and that Defendants' failure to act caused D.N.S. to be assaulted. The complaint alleges no action taken by any defendant that either placed D.N.S. in danger or increased the danger he already faced.

In stark contrast to Spruill, the plaintiff in *Eilenfeldt* alleged several affirmative acts by the defendants there that placed the student at increased risk of bullying by his peers. *See* 84 F. Supp. 3d at 838 ("[A]dministrators and teachers facilitated ongoing bullying of J.M. by … actively encouraging bullying … and punishing J.M. for defending himself while being

8

bullied."); *id*. at 839 ("[A teacher] gave J.M. detention for telling two bullies that he was not a rapist after those students had called him a rapist in her classroom."); *ibid*. ("In one of [a teacher's] classes, J.M. tried to defend himself from bullies. Following the altercation, [the teacher] asked the class whether J.M. should be punished by having to write out the preamble to the United States Constitution twenty-five times, and the class agreed to impose the punishment."). Thus, it was no defense to the plaintiff's claim that the bullying was perpetrated by other students rather than by the defendants themselves. And that is why the *Eilenfeldt* defendants' argument failed: because they *had* affirmatively acted in a way that placed the student in increased danger, the state-created danger doctrine applied. Here, Defendants did not take any such affirmative acts, so the doctrine does not apply.

As Spruill herself correctly recognizes, "the pivotal question is whether D.N.S. was safe before the Defendants' *conduct* and unsafe after." Doc. 20 at 5 (emphasis added); *see Sandage*, 548 F.3d at 598 (explaining that there is a due process violation only when "the victim is safe before the state *intervenes* and unsafe afterward") (emphasis added). What defeats her case is that she points to no such conduct by any defendant; rather, she points only to inaction. Doc. 20 at 5-6 ("By *failing* to properly discipline D.R. for the first assault or to monitor him in any manner thereafter, the Defendants emboldened D.R. to do it again … . The Board's *inaction* led directly to D.R. believing he was invincible. … '[T]he Defendants' '*inaction*' created a risk of harm to D.N.S. that he would not have otherwise faced.") (emphasis added).

To be sure, the complaint does *say* three times that Defendants "created or increased" the risk of a sexual assault. Doc. 1 at ¶¶ 38-40. But those conclusory legal assertions are insufficient to withstand a motion to dismiss, and in any event are belied by the complaint's factual allegations. *See Zablocki v. Merchs. Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020)

9

("[W]e need not accept as true statements of law or unsupported conclusory factual allegations.") (internal quotation marks omitted); *Doe v. Columbia Coll. Chi.*, 933 F.3d 849, 854 (7th Cir. 2019) ("A plaintiff must plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct.").

Because the complaint fails to allege an affirmative act by any defendant, Spruill's state-created danger claim fails. It is therefore unnecessary to address Individual Defendants' arguments that the complaint does not allege proximate causation, Doc. 16 at 4-6, that their alleged conduct does not shock the conscience, *id*. at 6-8, that the complaint does not allege their individual involvement, *id*. at 8-9, and that they are entitled to qualified immunity, *id*. at 9-10. And because the complaint does not allege that D.N.S.'s constitutional rights were violated, there can be no *Monell* claim against the Board. *See Word v. City of Chicago*, 946 F.3d 391, 395 (7th Cir. 2020) ("[B]ecause [the plaintiff] has failed to establish an underlying constitutional violation, the district court appropriately dismissed his *Monell* claim."); *King*, 496 F.3d at 817 ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [the plaintiff's] constitutional rights.").

## Conclusion

Defendants' motion to dismiss is granted. The dismissal is without prejudice to Spruill filing an amended complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, … a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend … ."). Spruill will have until May 11, 2021, to file an amended complaint, and Defendants will have until June 3, 2021, to file a responsive pleading. If Spruill does not

replead, the dismissal will automatically convert to a dismissal with prejudice and judgment will be entered.

April 13, 2021

_____
United States District Judge

11